We have one argument on the docket today and it is in case number 2022-7007, Neal v. Vannoy. Counsel, you may proceed. Good morning and may it please the court. My name is Matthew Kloss and I am here on behalf of Appellant Daryl Vannoy. In this case, habeas relief is prohibited for three reasons. First, the district court erroneously substituted its own appreciation of the facts for the state trial courts. Second, Mr. Neal fails to satisfy an exception to the habeas statutes bar on relitigation. Third, even if he had satisfied such an exception under no vote review, he fails to prove ineffective assistance of counsel. For these reasons, the district court's judgment granting relief must be reversed. These ineffective assistance of counsel claims should be denied with prejudice and the matter should be remanded to the district court for consideration of the claims for relief which were denied as moot in light of its grant of relief for the immediate claims before the court. Unless there are any immediate questions, I'd like to begin with the district court's erroneous factual determination in this case. To begin with, it was error to disregard the state court's determination of strategic action. I think frankly, there's no real disagreement about that. If you look at defendant's brief, they don't claim that the correct standard of review was applied. They certainly claimed that this issue was waived and if otherwise claimed that the standard of review was overcome, but it doesn't claim the district court correctly applied the standard. Explain to me the standard on strategic choice. It seems to be it's at least in two parts, not standard review, but determinations in two parts. Was it a strategic choice? Is that what the lawyer was up to? And was the choice to stand up? I won't add a word to what it has to stand up to, but isn't it in two parts? You can tell me how we should play through that. I absolutely agree with that, Judge. I think you're right to say that whether or not counsel acted strategic is a matter of historical fact. As such, whether or not he acted strategically is entitled to the E-1 presumption of correctness. That can only be overcome. Irrebuttable presumption? That's correct, Your Honor. It is a rebuttable presumption. It has to be presumed correct, but it can only be rebutted with clear and convincing evidence to the contrary. In this case... That's the historic fact. How about about how to review the propriety of that historical fact having been it, that strategic choice having been exercised? We absolutely agree that it's a twofold question. One, whether or not there was a strategic action in this case. If there was a strategic action, that can still be ineffective assistance of counsel because it could be unreasonable to have made the strategic decision that was made in this case. So it's a twofold question. In this case, the district court never got to whether or not the strategic choice that counsel made was reasonable or not because it disregarded the factual conclusion that there had been a strategic choice. What it should have done is evaluate under the correct standard of review whether or not the state court's decision that there was a strategic choice had been overcome on a state court record. If it applied the correct standard of review and had found that the presumption of correctness was overcome by clear and convincing evidence, the next question it should have asked is whether or not that was the fact that they made a strategic decision, whether or not that strategic decision was reasonable under the circumstances in light of the state court record. In this case, because the district court did no analysis on whether or not it would have been reasonable to act as defense counsel acted in this case because it failed to correctly examine the state court's factual determination, the counsel had acted reasonably. In that regard, your honor, I understand how the district court's interpretation of trial counsel's affidavit is debatable as you say on your brief at page 36. Go ahead, I'm sorry. I'm sorry I cut you off, Judge. No, that's the question. How can it be debatable that there are multiple reasonable interpretations? How are there multiple reasonable interpretations that a person says they don't have the report and if they would have had it they would have used it? And then later on you say there's a contradiction in that on the next page that it's incompatible. I don't see how that's incompatible at all. That's completely consistent on page 37. You said it's incompatible. Can you help? Yes, ma'am. The first thing I think that's important to notice is that defense counsel's affidavit in this case, he did not say that he did not have a strategic reason for acting in what he said is that he did not receive the reports and if he had, he would have used them at trial to undermine the prosecution's case against Jarrell. In this case, counsel stated that he didn't recall whether or not he'd received these reports. He didn't say he didn't receive them. He said he couldn't recall whether or not he'd received them. He did receive them. He would have used them. And so the presumption that is probably he didn't receive, if they came to his office, he says that they didn't get sent to him and we can't consider that. But the alternative is they came and they sat at his office and nobody brought them to his attention or he didn't detail correctly. I think in this case, that concludes, first of all, he said he couldn't recall whether or not he had received them. The district court doesn't agree with the state court's finding that, in fact, he did receive them. So what's before the court is that he did receive them. The next question is whether or not he reviewed them. In this, he couldn't recall one way or the other. He didn't disregard the possibility that he had a strategic reason for doing it. He simply couldn't recall. And there's certainly ample reason in the after the trial in this case. He destroyed his own contemporaneous notes of what happened in the case. He also misinterpreted and misrepresented the serology report in this case. So there's reason to doubt that even if he had made an unambiguous affirmation that he didn't read these, there would have been ample reason for the state court to consider that as not credible. When I said- Among your arguments and your grief about why he must have received them is how he handled examination at trial. He didn't act surprised when information about this came in. I don't know this fellow. You waved like a banner. The fact that someone said he was one of the best lawyers in the parish, I don't remember now who that was, covers everything that he did. It was a protective veil. It seems to me one way to read what this lawyer was doing at trial was very little, whether he was surprised or not. He just was not pursuing a very aggressive defense of this. There were no, you can check it off better than I can and your friend on the adjacent screen even better perhaps on all the things he did not do. So I'm not sure your argument in your brief is all that convincing that he didn't act surprised in various aspects of this maybe unreviewed material were mentioned by other witnesses. Well, with respect, your honor, I think we have to begin with the presumption that he did act reasonably. We haven't forgotten. We know you got your presumption. Yes, sir. Your honor, I think what I would first point to is the way defense counsel handled other forensic evidence in this case with specifically the GSR test. The argument that counsel didn't review and didn't use and wasn't familiar with the forensic reports in this case is flatly contradicted by the fact that he extensively used the GSR test, for example, in this case. It's unambiguously clear. We say from the trial court record that he had the GSR test. It's unambiguously clear that he cross examined the witness extensively with the GSR results. And so to say that he was unfamiliar with the forensic evidence in this case, I think it's simply contradicted by the record. I think when they sent over in the same envelope, I beg I believe I believe the GSR test is listed on the the letter that the state district court relied on and concluding, among other reasons, that he had received the serology report and that he received the footprint report in this case. And so I think the evidence and evidence of the which he used the GSR test is evidence, again, that and again, it's not disputed right now that the state court record was adequate to show that he had these reports. I don't see that that's a disputed fact presently before the court. That's what I'm trying to figure out if he was using some forensic reports that came in the same packet. That's as opposed to, oh, I didn't ever read them. That's that goes to whether he read the packet. Yes. Among among other items, for example, the ballistic report that was introduced at trial without any objection from defense counsel, the fact that the drugs in question were cocaine that was in a report that was admitted by way of stipulation. And so I think if the court looks at the manner in which he handled all forensic evidence in this case, there certainly there was there were forensic conclusions that were admitted without objection because they weren't contested. But in terms of the forensic report regarding serology and the footprint report, I think there were there are ample strategic reasons for him to have not introduced any additional details regarding the footprint or the serology report. What I would remind the court is that the most of the serology report or at least its conclusions were introduced at trial. The only fact that wasn't introduced is that there was possibly not definitely, but possibly blood on Arthur Darby's shoe. There were certainly reasons for the trial that the fact that there was no connection between the. The fact that the evidence that there was a bloody footprint that definitely was not the petitioner's footprint. That's right, your honor. But it wasn't that that was introduced. That fact came before the trial court in that the footprint, the test, according to the testimony, could not be conclusively matched to anybody, not to the defendant, not to Arthur Darby, not to Zannie Neal. That fact came before the jury. The only thing with regards to the bloody footprint that wasn't put before the jury is that Zannie Neal's footprint could not be excluded. That doesn't mean it was his and that doesn't mean it was matched to Zannie Neal's footprint. The only fact not put before the jury is that it could not be excluded, while Arthur Darby's and Jarrell Neal's footprint could be excluded. But again, that fact was entirely consistent with the testimony of Arthur Darby who said that Zannie Neal, along with Jarrell Neal, went into the house. With regard to the serology report, again, the facts that weren't put before the jury is that it was potentially blood on Arthur Darby's shoe and potentially blood on Zannie Neal's shoe. It wasn't conclusively either. But that's really interesting, though. And the fact you say, oh, well, there's an explanation why Darby could have blood on his shoe. It could be his own blood from being attacked by some dogs or something. The fact that he might have to explain that and see if the jury believes him would have been a key moment in the case. And whether or not there had been any DNA testing of whether it was his blood or someone else's blood. That would have all come out in front of the jury. To have the key witness have to explain why, if he was in the car the whole time, he's the one with the blood on his shoes. When he's the whole one wanting to do the transaction in the first place, it's his business they're taking care of. And he's the key person that places this person as the shooter. I think that would have been the most important, one of the most important things at trial. So even if it was strategy, how does it solve the second prong that Judge Southwick went off with you at the beginning, went over with you in the beginning? Well, Your Honor, I think what we have to remember is that both the footprint report and the serology report were double-edged evidence. There was conceivably parts, and I would agree there certainly was some impeachment value there for both of them. But there was also aspects that were inculpatory as to the defendant. So when you start with the presumption of strategy, and the court doesn't engage with the correct fact-finding test to reject the determination that it's strategy, the question is whether or not it would have been reasonable for an attorney faced with those pieces of evidence to conclude that there was risk associated with introducing either of those. I don't deny- What is the inculpatory nature of bringing out that there's blood on Darby's shoes? What's inculpatory about that? There's an explanation for it, but I don't see how it inculpates Mr. Neal. Because the same argument could be made with regard to Jarrell Neal's shoe. The same report that said that there was possible blood on Arthur Darby's shoe also said there was possible blood on Jarrell Neal's shoe. And so if the argument is that that report proves that Arthur Darby went into the house, by the same token it proves that Neal went into the house. And so there's a highly inculpatory aspect to the serology. It's not unusual, Mr. Claus, for a lawyer to lose me, and they may be making perfect sense, but it does seem to me what the defendant here was trying to say is regardless of who the other person was, I wasn't one of the two people who went in. So I really don't see- I mean, inculpatory at all. It seems to me your argument in brief, somewhat helpful, but obviously it's strategic, that if Darby explained it because it was bitten by the canine unit animals undermines a little bit the effort, but it's still there. Let me ask you something different about the blood. Hossie Shin versus Ramirez caused a change in the decision Chief Judge Brown made. What is the procedure in Louisiana for successive state applications, petitions for habeas? I don't know when that report was done. I assume counsel can tell me that, but maybe you know. Can that be pursued as a renewed habeas in state court? It could be, Your Honor. There has been, since this case has been filed, there's been an application in state district court that has been stayed due to the pendency of this appeal. I don't want to prejudge that, but that's pretty powerful evidence that Shin versus Ramirez says we can't consider. I don't think there's a contrary argument. I'd be happy to hear it, but nonetheless that we can't consider. Well, we certainly we certainly make sure that that's not necessarily a locked door in the state court on that. No, Your Honor. There is a pending application in state district court considering exactly that issue. Again, it's been stayed due to the pendency of this appeal, but the claim there is that he is factually innocent of the conviction in this case in light of the DNA evidence, which again I hasten to add is not before the court and the current claims for relief that are. Can you help? Should that case be before our case? I'm sorry. I understand you said it stayed, but in regular order, should that be what should happen? As it is presented in state district court, it is a new claim for relief. The argument is that the district court in state district court can consider that because it is evidence that he's factually innocent of the crime in front of him. With regard to, and I will say that it is stayed at the request of defense. It wasn't stayed by the state. I could certainly understand the court wanting to wait and see what happens with that. I'm not sure that's required, but to the extent, I will say DNA is not before the court as a result of Shin versus Ramirez, which I think Judge Brown correctly recognized. We understand that's not before us again. We'll hear some argument in contrary, but I don't think that argument is there. Let me ask you, let's say we go off the rails from your viewpoint and say this, the district judge, Judge Brown, made a proper decision to say this was not a strategic choice. She never perhaps made the analysis in quite the way that you say she should have. It wouldn't have been a reasonable strategic choice if there were one. We're beyond all that. We're looking at credit. Let me hear your argument as to why this would not be credit additional. What standard we should be applying in deciding that? Well, Your Honor, with regard to prejudice, I think it would be a straight D1 analysis. In other words, whether or not the district court's determination that there wasn't prejudice was unreasonable. The test for that is whether or not it is impossible for any reasonable fact finder to conclude that the district court got it wrong in this case. In this case, the district court said that there is no prejudice because of the strength of the evidence, A, that corroborated Arthur Darby, but B, that independently determined proof that he was guilty. The Louisiana Supreme Court in direct review held that either Darby or the independent evidence, for example, the police officers who observed Arthur Darby with the murder weapon in his hands immediately after these murders, while he fled the scene of these murders, which he used to shoot at police officers. The Louisiana Supreme Court and the state district court found that independently that corroborated the defendant's involvement, that it proved his intent as required under the Louisiana law, and that it independently proved his guilt of first-degree murder. I think that's exactly right. In this case, your brief talks about that he would be guilty of capital murder or felony murder, whatever you call it in Louisiana, but we're not talking about whether he's guilty of the offense. We're talking about whether the jury would have imposed a death penalty. We have two other people who, under your theory, were also guilty of the same crime. One got a 20-year sentence, and I forget what the brother had. So it seems to me that that's not quite our point, whether he's guilty of the crime or would a jury who knew, reasonable doubt, whatever, that he wasn't the shooter, would they have given him the death sentence? Isn't that our question on prejudice? Respectfully, I disagree, your honor, because in this case, Judge Brown has ordered a retrial as to guilt, which necessarily means a retrial. Your honor may be perfectly right that Mr. Darby's... Wait a minute. You're saying Chief Judge Brown decided the whole thing had been done over. That, to me, is not my point. My point is, regardless of whether he could have been found guilty of what is the crime in Louisiana, felony murder, capital murder... First-degree murder, Judge. First-degree murder. Regardless of that, if we're looking just at the sentence, that's the only aspect of it that matters, and very much on remand and our issues in front of us on capital cases, is whether this evidence would have persuaded the jury not to give the death notice. One juror not to stand up for the death notice. I think, your honor, it is right. The relative guilt of the parties in this case would be an appropriate question for whether or not the jury would have imposed a death penalty or not. I submit that it is an irrelevant question as to whether or not the defendant was guilty, and therefore deserves a new trial with regard to guilt, respectfully. I take the court's point, but the thrust of the brief in this case, the finding of the State District Court, and frankly, what the Louisiana Supreme Court found on appeal, in direct appeal, is that the evidence, independent of Darby's testimony, was sufficient under Louisiana law to find him guilty of first-degree murder. And secondly, that it was independently sufficient to adequately corroborate Darby's testimony, even if confronted with the additional impeachment that the serology report or the footprint report implied. Where does that get us? If we could agree with you that it's the sentence that would be at issue, what would we do differently? Your honor, I think if the court were to conclude that the defendant was ineffective with regard to sentencing, I think the appropriate ruling would be to affirm the defendant's conviction, but to order a retrial with regard to sentencing. This was a bifurcated trial. Guilt and sentencing were separate components, but were before the same jury. What I would suggest the court do under that scenario would be to leave the conviction in place and to order a retrial before a new jury with regard to sentencing. But all the other issues have to be resolved, though, in the district court that were determined to be moot? Yes, yes. Those are all about conviction, right? So that would take place before there would ever be a re-sentencing. That's absolutely right, your honor. There are numerous claims for relief that would be before the federal district court, which were not considered ultimately by the district court because they were moot in light of its grant of relief with regard to these ineffective assistance of counsel claims. I have a question. Aside from Darby's testimony, what was the evidence that Jarrell Neal was the shooter? The fact that the murder weapon was found in his hands immediately after him fleeing the scene of the murders, and his use of that murder weapon that was ballistically proven to be the one that killed one of the victims in the house, his use of that weapon while fleeing from the police to try to kill those police officers. That's it? No, your honor. I mean, I think there's certainly other aspects, but I think the most important aspect was the fact that the murder weapon- Well, Darby, I understand you're saying Jarrell Neal used that weapon after the shooting in the house. Yes, sir. All right. So you got him in the truck with the weapon. Yes, sir. Anything else? I think the timing of when that was found in his hands immediately after the fact that the shooting occurred, I think there was a more than immediately. I thought the police was, I thought they were chasing a vehicle. That's correct, your honor. And the vehicle they were chasing is a vehicle that he was a front seat passenger in. And while in the front seat passenger seat of that vehicle, he used the murder weapon to attempt to murder the police officers and the police officers- Right now I'm talking about immediacy. Yes, sir. Do you know exactly how long it was from the shootings in the house to the time the police gave chase? Your honor, the independent witnesses who were in a vehicle that was parked on the same street as the location where this murder occurred said that immediately after the shots, they observed two individuals fleeing from the location where this murder occurred. When did the police give chase is my question. How long was it before the police arrived? The testimony was from approximately 20 seconds after the second set of shots, the police officer was behind that vehicle following it and had continuous observation of it until that gun was retrieved. Judge South, can I ask one more question? I have another question. Darby was driving though, right? That's correct. The Darby was driving. Well, why isn't it totally reasonable that he hands the gun to him and so that he'll shoot at the officers or so that he's connected with the gun because he realizes it's about to go down? So, why is that just as reasonable and certainly reasonable doubt as to whether or not he was the shooter even without all this other stuff? I don't understand. Respectfully, Judge Elrod, I think the question is not whether or not there was, you know, an exculpatory or other reasonable interpretation of the evidence. The question is whether or not the state district court's resolution of that question was unreasonable. If there was even one reasonable way for the state district court to resolve this case in the way that it did and on federal habeas, this court has to defer to that reasonable interpretation. Right, and we've done that many, we've all sat on many, many federal habeas cases, but this one does have unique facts and so that's why we're trying to get to the bottom of whether or not the rest of the evidence is so persuasive that we can say with definiteness that it didn't make a difference. Yes, ma'am, I think that the argument there is that a reasonable fact finder could conclude based on the timing of when the police observations occurred combined with what the police observed, namely his use of the firearm in question, that he had a reasonable inference is that the person who was found with the gun is the person who used the gun during the murders themselves. I think that's a reasonable interpretation of the facts and I don't think it would be impossible, impossible for a fact finder to disregard that out of hand. Okay, does anybody else have a question? Okay, the time has expired and we're going to give your friend on the other side an extra two minutes because we kept you at least two minutes over and we want to be fair to both sides. Save time for rebuttal. Thank you very much. I thought I said use all your time. No, we're not saying everybody has to use your time but it is there for you. You may proceed. Good morning and I appreciate the extra time. I hope I won't need it but I'm glad it's there. May it please the clerk. My name is Cecilia Trenacosta-Cappell and I represent the appellee Jarrell Neal and I definitely want to get to the prejudice analysis which your owners are asking about but I sort of want to step back a little bit and look at the totality of the facts here. Arthur Darby's testimony was the only evidence at trial directly supporting the state's theory that Jarrell Neal entered that house on Wilson Street and shot and killed Gregory Vickers and Fergus Robinson. There was no physical evidence that connected Jarrell Neal to the scene and the sole eyewitness described the shooter as being tall, thin, dressed all in black. Arthur Darby was tall. That is powerful evidence but the jury had it and that's one of the reasons I see prejudice is particularly significant here. They had the most damning evidence which is the size and clothing, the jury did, size and clothing difference from the defendant here versus Darby. So anyway, I wanted to point that out because I do think I mean there's no argument that that evidence wasn't fully presented to the jury, correct? That's correct your honor and I think it's important to look at the Louisiana Supreme Court's decision on direct appeal just looking at the record as it stood. We've got the description of the shooter matching Arthur Darby. Darby is admitting that he is tall, slim, he was dressed in black at the time while Jarrell Neal is five foot eight, medium build, he was dressed in light brown khakis at the time he was arrested. What's the high difference five versus what? Arthur Darby, what we know is that he is tall. He describes himself as tall at trial and that's in his trial record and he's thin. One's not fat, one thin necessarily. Mr. Neal and his brother Zanier sort of meets a medium stocky build. I would describe them as meatballs while Arthur Darby is more tall and slim. There's no confessions on how tall the witness was. I don't know your honor. I'm sending you down rabbit trails. Get back on course. I'm sorry. But again the Supreme Court's going through this evidence. There's no confession. There's no DNA evidence and the eyewitness is acquainted with Jarrell Neal and she identifies Darby as the shooter at Zanier's trial. And so the Louisiana Supreme Court goes through this evidence and concludes that at the end of the day the state's case depended on Arthur Darby's testimony. The jury believed the prosecutor when the prosecutor said that Darby told the truth. And that was something that was within the province of the fact finder. And so the Louisiana Supreme Court said that the evidence under the Jackson standard was sufficient to convict. And I point to that because it's important just to look at what did the Louisiana Supreme Court find was important here. And they found that Darby's testimony was the deciding factor because the jury believed his testimony over the defense theory. And so this case was about who was the shooter, who accompanied the shooter in the house, and who stayed in the car. And counsel despite waiving opening statement had a clear goal and that was to show that Darby was the shooter. Today I want to answer questions that your honors may have but I do want to make sure that I'm going to address three points here. One is the record before the state court and showing the lack of strategy in counsel's failure to use these three items of evidence. Second trial counsel's affidavit and third obviously the prejudice that is caused by the deficient performance here. Before you do that, I know you're trying to get to your outline and I apologize, but what if we don't agree that there could be waiver that we believe that you can't have waiver in this context? Just assume argument that that might be the case. How does that affect your argument in any way? Well assuming that the state has not waived its argument that the district court should have applied an E1 analysis to the question of strategy. Findings of historical fact are entitled to E1 deference, but a decision that is a mixed question of fact and law must be subject to D1 or D2. And the determination that a lawyer made a strategic... Have you just agreed that that if this argument is before us that the presumption of validity of the fact finding cannot be overcome by any of the evidence that's been presented? Not at all your honor. I guess you lost me there so I'm glad you're... I'm sorry. I'll clarify. Whether a strategic choice is made under Strickland is a mixed question of fact and law. It is not... Whether it's a strategic choice is a straight-up fact question. Whether it's a reasonable strategic choice is a mixed question. Would you agree with that? I would not agree with that your honor because the question of whether a lawyer made a strategic choice is a question that must apply a legal standard under Strickland. A strategy has to be a reasonable strategy in order to... I'm dividing it in two. You're making it one. I'm not sure why. I do think the case law supports it as two pieces, but let's say we are treating this as a separate factual issue. Was this a strategic choice or is the guy just asleep? Was he not paying attention? Was he not doing a good job and making no choices? What do you have that would suggest there was no strategy involved and he just wasn't doing a good job? I'm not talking about reasonable, but it was no strategy. What evidence would there be that there was no strategy involved factually at the time back in 1999-2000, whenever it was? Well, if we're talking about what the evidence was in the record itself, it's that no reasonable lawyer wouldn't have used this evidence. There was no downside to before the state court, and it's corroborated by the state court record. I'd like to go through the state court record, if I may, but to stay on your question for a moment. The state court's decision in this case, I think it's important to look at the actual language the state court is using here. His investigation and examination of witnesses were strategic choices, which do not constitute ineffective assistance of counsel. The state court is not finding that Mr. Barnett made a reasoned, informed, strategic choice. At most, the state court finds that the state turned this evidence over to counsel, that they didn't commit a Brady violation. The state court doesn't find that he read the reports that he made this sort of considered strategic choice under Strickland. The wording of this decision is a legal finding. It mirrors the language that was just quoted right before that in State v. Strahan, which is a state Supreme Court case from 1975, which holds that decisions with regard to witnesses and motions are trial tactics and are not ineffective assistance of counsel. This is clearly a merits ruling that applies a legal standard. It's not a finding of historical fact under E-1. But even if it was a finding of historical fact, which I don't concede, even if it was, no sane lawyer wouldn't have used this evidence. I want to bring us back to the statement from Arthur Darby. Right before trial, this is the night before trial started, Lieutenant Juris conducts a recorded interview of Darby and he asks him, what kind of gun did Jarrell have when he got out? Darby answers, I didn't see when he got out. He then asks, did you see any weapons when he first got out? And Darby responds, no. In the state's opening statement, the prosecutor tells the jury, Darby is going to tell you he sees Jarrell holding that Mac 90 when he gets out of the car. On direct examination, the prosecutor asked whether Jarrell had anything in his hands when he got out. Darby answers, he has a rifle. He describes that rifle and he identifies it in court. Prosecutor asks again, who had the rifle when he got out? Darby says again, Jarrell. And he also says Zaney had nothing in his hands. And so then during the cross-examination, we see defense counsel shouting at Darby, accusing him of being a liar, getting him to admit that he is tall, slim, and dressed in black, while Jarrell is not tall, not slim, wasn't dressed in black. But counsel never mentions the fact that Darby had just days before that denied seeing anything in Jarrell's hands when he got out of the car. And the state admits that defense's whole strategy was to impeach Darby's that he was the shooter. And so there's no downside in using this statement. This wasn't a double-edged sword. It's not going to open the door to anything. Counsel, I'm wondering though, he did use some of the forensic evidence in the examination. And if it was all sent together, isn't it more likely to infer that it was strategic to use some but not other? Can you address that? And he did talk about the footprint at one point at the trial, for example. I'm happy to address the forensic evidence. We're talking specifically about the state presented gunshot residue evidence, ballistic testing evidence. And these reports were turned over to defense counsel on the record. And it wasn't just in the package that the state apparently sent the serology and shoot prep reports. The state disclosed this on the record. And I'll direct you to page 11984, which is the state's response to discovery. They submitted it in court. They said, we're giving this to defense counsel. They did a response to the prayer for Oyer, in which they responded and gave the gunshot residue analysis. So we know counsel had these things and he had them with him in court. But the record in no way indicates that counsel had the shoot print and serology reports with him. Now, we do assume that the state sent these reports to him. And with all due deference to the state court, Mr. Barnett received them. We don't know if he read them. We don't know if he was handed them in court and left them there. You're saying it wasn't the same packet? Was that part of it? What I'm saying, Your Honor, is that he was independently given the other forensic reports. In court, instead of just... In court, on the record, made a full record of those disclosures. Not so for the... Okay. So they may have also been in the packet, but the things he did talk about were given to him at another time. That's right. In advance of trial. And so there's this bloody shoot print. The state tests it, that Jarrell was excluded. Zaney was not excluded. The serology evidence shows that Darby's got presumptive blood on his shoe. They save a sample of that blood for later DNA testing. It's not contested that Mr. Barnett never went to review the state's evidence before trial. Never hired an expert. Never had an expert go look at the evidence. Certainly didn't do independent testing. Never even looked at the state's evidence. And so it's not just that he didn't have these reports. It's that he didn't do any independent investigation into this evidence. So the state post-conviction court found that Mr. Barnett had the reports. There's just no finding that he did anything with these reports. And in that connection, even if he got reports, it's not unusual, is it, that you may hire your own expert? Even if you have, for example, a serology report that says one thing, you may hire somebody, your own expert, to say what those results mean, what the implications are. That's not unusual, is it? No, and it is standard practice in a capital murder case. Absolutely. Um, but to get to the cross-examination that Mr. Barnett did, so during direct examination, Lieutenant Buras is asked about testing. And Lieutenant Buras said some serology was requested on items. No mention is made of the results. No mention is made, certainly, of the fact that Darby has blood and tissue. During cross-examination, Mr. Barnett asked him, why aren't we being shown all the results of everything that you sent to the lab? Lieutenant Buras answers, because it all tested negative. Now, it didn't all test negative. Darby's shoe tested positive for blood. But setting aside that fact, what this exchange shows between Mr. Barnett and Lieutenant Buras is that defense counsel isn't hiding anything. He's asking questions that should result in the analysis. State's witnesses don't do that. But he doesn't pull out the piece of paper and say, isn't it true that Darby's shoe tested positive for blood? And this is not a situation where it's opening the door to unfavorable evidence. If the state wanted to put on evidence that Jarrell had blood on his shoe, the state could have done that. The state could have conducted DNA testing. The defense could have conducted DNA testing. But this wasn't a situation where, if he doesn't mention serology, the state can't introduce this evidence. The state could absolutely introduce this evidence. Mr. Kelly asked me something about the evidence on the shoes. One of your briefs, meaning either you or the opposing counsel, there's some reference about a possible, at some stage, confusion about whose shoe belongs to whom. Is that an issue you're cross with? Is there some question about whose shoe is which? No, there is not. The state court record... That's fine. Yes, no is good. He can respond. But it's in one of your briefs. And I may not have understood the import of it. So keep going. I'll just briefly refer your honors to footnotes 8 through 10 of the district court's decision in which the district court goes into detail as to how many places in the state record that the state attributes item number 78 to Jarrell Neal and item number 13 to Arthur Darby. There's not a single place in the record that attributes item 78 to Arthur Darby. But moving on to the shoe print, the state introduces photos of the shoe print, the bloody shoe print. Detective Sachs testifies that this is a very important piece of evidence because it shows that somebody in this house has stepped in blood. And so if we can determine who stepped in blood, that would be important. And so on cross-examination, Mr. Barnett asked several questions to Detective Sachs about the shoe print. But Detective Sachs testifies, we were never able to match it to an actual shoe. That's at page 5351 of the record. And again, Mr. Barnett is asking questions that should have resulted in the results of the analysis. But he's not getting those answers. And he's not pulling out the piece of paper to ask Detective Sachs that, OK, well, wasn't my client excluded as the source of that shoe print? Was Zaney excluded? Oh, you couldn't exclude Zaney? But he never does this. And so it shows a lack of strategy in not using this evidence. It's apparent from the record. He never uses the analysis. The analysis is never mentioned. And so he's just asking questions. And I would sort of compare this to the fingerprint situation where he's asking questions about fingerprints. But we know there's no fingerprint report. I've never seen a fingerprint report. And what he's doing, he's just blindly asking questions without any piece of paper to help him. And he did have the gunshot residue report. And we know he got that. But he never uses the shoe print for the serology reports. He never mentions it. The inconsistent statements. He did use one of the inconsistent statements. So he had the inconsistent statements. You're not doubting that, right? Yes, Your Honor. This is another situation where the record is not entirely clear what happened there. What we have is a docket entry saying there's Brady statements, there's two Brady statements in that statement. That's all we have. But what we are doing is deferring to the state court's decision that Mr. Barnett had the statement. But what Mr. Barnett didn't do is he didn't use that critical inconsistent statement of Darby. But were they in the same document? Because he did use another inconsistent statement that I thought from reading the blue brief was in the same document. Your Honor, I have never seen a document that was produced by the state about the statement. What we have is a transcript that was created by the defense from an audio tape cassette. And so again, the record is not clear. Did the court play it for defense counsel? I don't know. But again, we assume that he was given access to that audio recording at some point. And so he may be using one inconsistency, but he's not using the inconsistency that the state uses the fact that Darby testifies that he seized Jarrell with that murder weapon throughout. Their whole case is depending on this. And in closing arguments, the prosecutor tells the jury the most important part of his statement was that Jarrell left the car with that military weapon designed for death. And at penalty phase, the state's whole theme was that Jarrell was there, not because of his family members who showed up to support them, but because of his own actions. And I quote from the state's closing argument. What did he do that night? He left the car with his brother Zaney Neal armed to the T with that Mac 90 assault rifle. And so this portion of Darby's statement was absolutely critical to impeach and Barnett doesn't use it. And I would also note that the prosecutor points out, oh, there's one inconsistency in the statement. That's it. Just one inconsistency. No, there was many inconsistencies, including this one, the jury never found out about. And so unless your honors have other questions about the, the non-use of these items of evidence at trial, I want to talk a little bit about trial counsel's affidavit sort of to judge Elrod's point earlier, Mr. Barnett stated that he doesn't remember getting these reports, but he's shown these reports and he immediately recognizes their significance. He says, I would have used these if I had them, but he didn't this case. He didn't review the state's evidence and he didn't consult with any experts. And for these purposes, we assume he had these items. And so what the affidavit shows is he doesn't remember having it, but he recognizes its value to his theory of the defense. And I'm not saying he should have taken a different theory. This was his theory. And it also shows that he was, and the Supreme court and this court had consistent with him being such a fabulous lawyer. Mr. Barnett had a lot of experience handling criminal cases, but this was the first bifurcated capital trial he did. And he just simply wasn't prepared for it. He was overmatched and he didn't do a reasonable investigation. I think that is the important thing here that in order for counsel to perform effectively, it's got to start with a reasonable investigation. The Supreme court has cautioned us that we have to be careful when people in the is so severe. There's a strong tendency to want to put it on yourself so that, you know, because it's such a serious outcome and that we have to be careful in reviewing those types of affidavits and that sort of thing. Do you have any comment on that? Two things, your honor. One is that the Supreme court and this court have also cautioned against post hoc rationalization that contradicts the available evidence of counsel's actions. And the evidence here is counsel's affidavit and the trial record. And I think what is really striking about this case, just looking at the bedrock Supreme court decisions on ineffective counsel under the EDPA standard, Terry Williams versus Taylor, Wiggins, Ronpilla versus Beard. These are all cases where counsel is taking steps to investigate the case. And in Williams versus Taylor, counsel interviewed witnesses, hired a psychiatrist. In Wiggins, counsel got the social service records and he gave those to a psychologist. And that case is similar to this one in that the state court had unreasonably applied Strickland's deficient performance by resting the decision on an assumption that counsel had conducted a reasonable investigation. And that is what the state court did in this case, instead of actually assessing what counsel did. In Ronpilla, this is a case where counsel hired something like five expert witnesses for this case. But what counsel didn't do is he didn't go look at the state's file to look at the evidence that the state was going to introduce against his client. And so the court held that that was deficient. That was a deficient level of investigation for that case. And the state hasn't even attempted to argue here that counsel investigated or attempted to defend the state court's finding that his investigation was unreasonable. He did no investigation. This was a capital murder trial and he did no investigation. And so this affidavit was something that was properly submitted for the state court in post-conviction. And as the Supreme to the petitioner's claim, that decision can be unreasonable or rebutted by clear and convincing evidence. The state is asking this court to take too far of a leap, which is to presume that the state court found that Mr. Barnett's affidavit lacked credibility by failing to mention this affidavit in its decision. But the state court references and credits an affidavit, two affidavits of Mr. Barnett that were submitted by the state, just never mentions the affidavit submitted by the defense that was central to not only the ineffective assistance of counsel claim, but also the Brady claim, which were claims, I believe, number one and number two in this petition. And so ultimately under a federal court, as this court looks at the state court decision as a product of the evidence that was before it. And there was no hearing. There was no credibility determination made by the state court. There was no competing affidavit submitted by the state where counsel said, oh, I did have a strategy. None of that was before the state court. What we have is a finding that counsel's investigation and examination of witnesses were reasonable. And that is just an unreasonable finding based on the Strickland standard and based on the record before it. And the district court here took its obligations under EDFA seriously. The district court, contrary to what the state argues, considers any reasonable strategy that defense counsel may have made before Chief Judge Brown concluded that the state court's decision was unreasonable in light of the facts and in light of an unreasonable application of Strickland. And so just in the last few minutes I have, I want to come back to the prejudice to Mr. Neal's right to a fair trial. And can you also address why it's the conviction that's at issue and not the sentence, given that just participating in the whole thing could get him the same conviction? Yes, Your Honor. So the state post-conviction court essentially made two findings as to prejudice. One was that the evidence was not exculpatory. And two, Mr. Neal would have been guilty as a principal regardless. First of all, Strickland does not require that evidence be exculpatory in order to show prejudice. There must be a reasonable probability of a different result. This is less than a preponderance of the evidence. Second, as to principles, the state's principles argument is just unsupported by Louisiana law. The law of principles is that, yes, people that are concerned in the commission of an offense are guilty as principals, but when the crime requires the state to prove specific intent, the state has to prove that each individual had specific intent to kill or cause great bodily harm to those victims beyond a reasonable doubt. And this is a circumstantial- Any jury instruction on principles? There wasn't jury instruction on principles. You think it was incorrect based on what you just said? That was one claim on direct appeal that the jury was incorrectly instructed on principles, but what the jury was correctly instructed on was the circumstantial evidence rule, which requires the state to exclude every reasonable hypothesis of innocence when it is a circumstantial case. And this was a circumstantial evidence case. There were two reasonable hypotheses of innocence. One was that Darby was the shooter. The other was that Zanin was the shooter. And without Darby's testimony, the state would have had a hard time excluding those reasonable hypotheses of innocence. And so if the state is going to go with this principles theory, then there must be a new trial because it completely places the state's evidence in a different light. And Louisiana Supreme Court's decision on direct appeal, again, it makes clear that the state has to prove specific intent as to each person. And even if there is no prejudice as to the conviction, which we assert that it was, this court must reverse the death sentence here. And the state, I believe, today has conceded that there was prejudice to the sentence. If Mr. Neal was guilty as a principal, that would be a mitigating circumstance that the jury must consider under Article 905.5, along with the fact that Mr. Neal was the youngest, youth is a mitigating circumstance, and that he was in this situation with his older brother and his older uncle. And so the district court found that the issue of who physically entered the house and who actually shot the victims here was an issue of against Jarell Neal, as opposed to Arthur Darby or Zaney Neal. And where the state's case for death required it to prove that Mr. Neal was the shooter, it just, it is objectively unreasonable to say that there's no prejudice to the sentence here. And this case is a simple case, actually, but it really is extraordinary in that Ralph Barnett represented Jarell Neal alone with no counsel, no investigator, no experts, and no support. It's uncontested that he did not investigate. This situation is also unlikely to reoccur. Zaney had the motive here. Zaney's driving in Zaney's car to collect Zaney's drug debt. Zaney's shoe match couldn't be excluded as a source of the print. Darby matched the eyewitness description of the shooter, and Darby has presumptive blood on his shoe. And to briefly answer Judge Southwick's question about the actual innocence statute in Louisiana under 926.2, the statute requires that evidence of innocence be newly discovered and unavailable to trial counsel. And so absolutely, we have argued that Mr. Neal is actually innocent, factually innocent, and that Darby was the shooter, as shown by the fact that he had Gregory Vickers' blood on his shoes. However, that evidence was available to trial counsel at the time. If trial counsel had gone... You've already used effective assistance here to get over some hurdles. Can you argue that in state court to get by a workaround of whether it was available at the time? We can try, but the language of the statute is very clear that it must be evidence that was not available at the time of trial. And so what we have... Thank you. I need to cut you off. I'm not in charge. If you have any further statements, Judge Elrod can let you move on. You're muted, Judge Elrod. You need to wrap it up, because I think your time has expired. I will just finish the sentence that I started and conclude, which is that we have submitted newly discovered evidence, which was a sworn affidavit from Zaney Neal saying that he went with Arthur Darby when Arthur Darby committed this murder. The DNA evidence supports that, but it's actually not newly discovered under the statute insofar as it was available to defense counsel at the time of trial. Are you involved in the state court proceedings? Yes, Your Honor. Are you involved in successive filing? Yes. It has been stayed. How far did the proceedings get before it was stayed? Not far. We filed the petition and asked for it to be stayed pending this court's decision. That's not far. Thank you. Thank you. We ask that this court affirm the district court's decision. Thank you. Counsel, you saved time for rebuttal. Thank you, Judge. In this case, even if Mr. Barnett's affidavit was unambiguous and he had claimed I had absolutely no strategy for not using these materials, the district court still could have found that to be not credible. There's ample examples of that occurring in the cases. That's from the Supreme Court. This court has said the same thing. In this case, we say it's not unambiguous. In this case, I think there's more than one way to interpret that affidavit. If that's true, they lose. If there was a reason for the district court to not find counsel's affidavit credible, then they lose on this point. This was an affidavit that occurred 12 years after the fact. The defense counsel was perfectly clear that he couldn't remember whether or not he didn't have his own file. He misrepresented or misunderstood what the report said. The district court would have had more than enough reason to consider this affidavit not credible, especially given what the Supreme Court has said. In circumstances like this, this court needs to regard these types of affidavits as suspect. Your Honor, with regard to whether or not there to judge Southwood's question, there was. The state did its own additional DNA evidence in this case. I realize that's not the issue immediately before the court. We did our own DNA analysis subsequent to theirs, which we say draws into question whose shoes were whose. Ultimately, the DNA, our argument is proofs of the defendant's involvement. Can we consider any of that? The test you're talking about is relatively recent. Absolutely not. Absolutely not. That is not before the court. We agree with that. I was just responding to Judge Southwick's inquiry as to whether or not there was a dispute about that. There is. But just to make sure, you're talking about relatively recent examination. It was approximately concomitant with defense counsel's DNA analysis. They requested and received opportunity to do DNA analysis at the federal district court. After their analysis, we did our own. That was both submitted in our motion for summary judgment and our response thereto. That was before the district court, but ultimately can't be considered as a result of intervening United States Supreme Court ruling in this case. And we can't consider the affidavit or whatever it was of the half-brother either. That's correct, Judge. That's correct. Your Honor, with regard to Judge Graves' question as to a failure to do additional investigation with regard to the serology report and the footprint report, in this case, in order to be successful in a failure to investigate claim, defense counsel has to show what additional investigation would have shown. In this case, the affidavit presented in the state court proceedings from the defense expert added no additional information whatsoever with regard to the footprint. So there's no evidence that additional investigation of the footprint would have changed anything. With regard to the serology report, the only additional fact that was added by defense counsel's expert is that the possible blood was, in fact, blood. But again, with regard to both the footprint and the serology report, it was a double-edged evidence. Well, we talked about why it might not have been double-edged, but couldn't they have done investigation to see whose blood was it on his shoes, Darby's shoes? In order to do that, Your Honor, so my understanding of the affidavit from defense counsel's expert is that there was with regard to type, for example, and there was no DNA testing at all. So anything that there was no additional evidence about what blood belonged to whom. Right, but they could have done an investigator and done that. I mean, wouldn't any... Nowadays, you pretty much have to have two or three experts and things, especially if the, you know, death penalty eligible investigators and things. Shouldn't he have had an investigator on that very point about Darby's shoes? Your Honor, I think that the evidence before the state disreport, the only additional fact that additional investigation added was that the possible blood was, in fact, blood. It's their burden to show what additional investigation would have shown. Here they haven't done that. The only additional fact still makes it double-edged evidence. At least the state disreport could have concluded in that regard. Ultimately, the question is whether or not any reasonable fact finder could have looked at these facts and concluded in a way contrary to the state disreport. We submit that on all these points. Okay, thank you. We appreciate the arguments today and we appreciate you appearing today by Zoom and so that we could have this in an expeditious manner. And this case is submitted. Thank you. Thank you, Judge. Thank you.